People of State of Illinois, Defendant in Error, v. Ann Jonerth, Plaintiff in Error.

Gen. No. 43,680.

350

Opinion filed April 8, 1946. Rehearing denied April 22, 1946. Released for publication April 23, 1946.

JOSEPH L. McCARTHY, of Chicago, for plaintiff in error.

WILLIAM J. TUOHY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, JOSEPH A. POPE, and W. S. MIROSLAWSKI, Assistant State's Attorneys, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

March 12, 1945, an information was filed charging that defendant, on the 9th day of March, 1945, in Chicago, stole 4 plate stands valued at $4.00, in violation of paragraph 387, chapter 38, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 37.328]. Defendant entered a plea of not guilty. There was a jury trial, witnesses were called by The People who testified that defendant stole 4 plate stands of the value of $4.00, on the 3rd floor of Marshall Field & Company. Defendant did not put in any evidence. From the report of the proceedings of the trial it appears that after plaintiff's evidence was introduced the court instructed the jury that under the law it was their duty to determine whether or not defendant had been proven guilty of the crime charged beyond a reasonable doubt, "and if you so find, then it will become your duty to fix the punishment to be imposed.

"The court has not given you any instructions on the subject of punishment. If you find the defendant not guilty, you will sign the verdict finding her not guilty.

"If you find the defendant guilty, you will sign the verdict finding her guilty and return to open court for further instructions on the subject of punishment.
. . .

"Your first duty upon retiring is to elect a foreman or forelady, and after you have done that, and deliberated upon and arrived at a verdict, return it to open court.

"You will retire now and determine whether or not you find the defendant guilty or not guilty."

This procedure was objected to by counsel for defendant. The bailiff was then sworn, the jury retired and after a time told the bailiff they had reached a verdict and came back into the court room at which time the following appears: "THE COURT: You have arrived at a verdict, have you? FORELADY OF THE JURY: Yes, your Honor. THE COURT: How do you find— guilty or not guilty? FORELADY OF JURY: Guilty. THE COURT: You may go ahead, Mr. States Attorney, as to the question of punishment." The jury then took their places in the jury box and The People called Thomas A. Laffey, a Sergeant of Police. He testified that he was assigned to the Bureau of Identification as the downtown Chief Inspector; that he kept records of crimes; that he had a record of Ann Jonerth and after some objections and a colloquy between court and counsel the witness read what purported to be the record of defendant, only a part of which we will refer to; that defendant was arrested March 9, 1945, as Dorothy Mason; that in 1926 she was sentenced to 60 days in the House of Correction for larceny and shoplifting. Then followed more than 2 printed pages of the report of the proceeding which shows that defendant went under various names, was arrested and found guilty in Evanston, Milwaukee, Minneapolis, Toledo, Cleveland, St. Louis and many other places, and the penalties imposed. All of this was over objection of counsel for defendant. After this was all read, the court instructed the jury that the Statute provided

that every person convicted of larceny, if the value of the property stolen was $15 or less, the person convicted should be confined in the county jail or sentenced to labor in the house of correction ''not exceeding one year, and fined not exceeding one hundred dollars.'' Continuing the court said: ''You may retire now to your jury room for the purpose of fixing the punishment of any time not to exceed one year and not to exceed $100.00.'' The jury then retired and in a short time returned with their verdict in the following words: ''We, the Jury, find the defendant, Ann Joneʹth, guilty in the manner and form charged in the information and fix her punishment at confinement in the County Jail for a period of One Year and the payment of a fine of $100.00 and costs,'' (signed by the 12 jurors).

■■ Counsel for The People in their brief say: ''After uncontradicted evidence, pertaining exclusively as to the guilt of the defendant, was introduced, the jury in an oral finding found the defendant guilty, the jury then proceeded to hear matters in aggravation or mitigation relative to the defendant, in order that it, the jury, might arrive at a proper and just punishment to be imposed upon the defendant. Upon hearing the same, the jury returned the verdict.'' In support of this *People v. Popescue,* 345 Ill. 142, and *People v. McWilliams,* 348 Ill. 333 are cited. We think the testimony of the officer, who read what he said was from the records of the defendant in the various communities, was inadmissible. There was no evidence as to the truth of any one of these. We are further of opinion that the record discloses the jury attempted to return, as they were instructed they should do, two verdicts, one orally—that the jury had found the defendant guilty—and the other, after the purported record was read by the officer, showing the various crimes with which defendant was charged, finding the defendant guilty, which we have above quoted. We

think there was no warrant, in law, to authorize such procedure.

In *People v. Popescue*, above mentioned, Popescue and another were indicted for murder in the Criminal court of Cook county. They entered pleas of guilty. They were each advised by the court of the legal consequences of their pleas. After the pleas were received and recorded the judge then proceeded to examine the witnesses as to the aggravation or mitigation of the offense, as required by the Statute. The principal ground for reversal was that the trial judge, after the pleas of guilty were entered, and before pronouncing sentence, heard the defendants themselves say they had committed another murder three hours before the crime charged in the indictment and that this evidence was prejudicial and beyond the scope of the court's authority under the Statute. The court there said (p. 149): ''In approaching the issue involved the distinction between the respective duties of the court and jury must be constantly borne in mind. In this State the jury in a homicide case not only have to determine the guilt or innocence of the defendant, but where they find him guilty must also fix the punishment. This double duty of determining both guilt and penalty distinguished the function of the jury from that of the court, where on a plea of guilty all questions of guilt or innocence are disposed of and the only remaining duty is to determine what penalty to impose.'' The court then points out that the penalty for murder might be death, life imprisonment or any term not less than 14 years. ''Where a jury hears the evidence they must at the same time and from the same evidence determine not only guilt or innocence, but in the same verdict, if guilt is found, they must also fix the punishment.'' The court then discusses the nature of evidence that might be introduced before the judge in aggravation or mitigation when considering the punishment to be inflicted, refers to *People*

.v. *Lane*, 300 Ill. 422; *People v. Meisner*, 311 Ill. 40; *People v. King*, 276 Ill. 138, and continuing said: "However, the distinction between those three cases and the case at bar must be clearly apparent. All three were jury trials, where the defendants were entitled to have the question of their guilt or innocence fairly determined by the same evidence that would be used by the jury in fixing their punishment. In those cases there were no pleas of guilty, no defenses offered which brought the proof of other crimes within any of the exceptions to the rule, and no proof that the other crimes were closely related in point of time and method of execution."

The Statute by which the jury in the instant case was authorized to fix the punishment is found in (b) Par. 754a, sec. 6a, ch. 38, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 37.742(1), subpar. (b)].

█ █ For the error in permitting the officer to read what purported to be the record of the defendant in the numerous cities in this country and the rendering of the two verdicts, one oral and one written, the judgment of the Municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT, P. J., and NIEMEYER, J., concur.