(No. 29105.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CASIMER BOTULINSKI, Plaintiff in Error.

*Opinion filed November 21, 1945—Rehearing denied Jan. 17, 1946.*

WM. SCOTT STEWART, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Casimer Botulinski, together with his co-defendants, Arthur Zdobylak and Walter Cropinski, was indicted for the crime of murder by shooting of Paul Weixler, who was a patron in a certain tavern and liquor store located at 7429 Addison street in the city of Chicago, Cook county, Illinois, on February 15, 1944. A plea of not guilty was made by each defendant, and a trial by jury was had in the criminal court of Cook county, and all of the defendants were found guilty. Plaintiff in error received a sentence of 199 years in the penitentiary, as did also Cropinski, and Zdobylak was sentenced to 14 years. Plaintiff in error, alone, has sued out a writ of error from this court to review said judgment.

The murder was committed by Botulinski in the course of a robbery of this tavern, when Weixler interfered in the robbery. The holdup took place about ten o'clock P.M. Testimony was offered by the State of a robbery by the same defendants fifteen minutes before ten o'clock P.M. of a tavern located at 5424 Fullerton avenue, which was situated about two or three miles distant from the Addison street tavern, and the robbery was described by three of the State's witnesses, being the owner and two of the customers. The State's evidence also showed that seven or eight minutes after the murder the defendants held up the Midwest Liquor Store located at 3134 North Cicero, which was about two miles distant from the Addison street tavern, and this robbery was described by two customers. All three taverns were within a radius of three miles and were robbed within a period of twenty-three minutes.

The bullet which killed Weixler was shot from a 45-caliber gun carried by Botulinski. The defendants met early in the evening and mutually agreed "to go out and get some money" and stole a Packard automobile which they used throughout the evening.

All of the defendants testified and admitted their presence in the Addison street tavern and the part each one took in the robbery. All of the defendants, however, denied an intention to kill Weixler and they swore that the 45-caliber revolver used by plaintiff in error was discharged as the result of a scuffle which occurred when Weixler interfered to prevent the robbery and grappled with Zdobylak. All of the State's witnesses who were in this tavern testified that Botulinski deliberately shot Weixler in the chest and killed him when he was facing him and only about one or two feet away. On cross-examination, Zdobylak was asked if he had stopped at another tavern on Fullerton avenue before he entered the one on Addison street. Objection was made, which was overruled, and he answered that they did, and afterwards that they went over to the place on Addison street. Then, on cross-examination, Cropinski was asked whether he had stopped at a place on Fullerton avenue first before he went to the liquor store on Addison street. Objection was made by counsel for plaintiff in error, and the court overruled the objection, and he testified that they stopped at a place on Fullerton first and then went to this place on Addison street. He was then asked as to whether they went to a liquor store on Cicero avenue after they left the tavern on Addison street. Objection was made, which was overruled by the court, and he testified they went to a liquor store on Cicero avenue and they went in there, after which they were chased by the police. Botulinski, in his cross-examination, testified, without objection, that they stopped on Fullerton avenue and after they left the place on Fullerton avenue they drove to the tavern on Addison street. Plaintiff in error was then asked as to whether they went over to a place on Cicero. Objection was made by counsel for plaintiff in error, which the court overruled, and the witness stated that they did and they were there a short time and that they were then chased by the police.

All of the defendants confessed to the murder, as well as to the other robberies. However, when they testified, each one claimed his confession was obtained by duress and promises.

It is to be noted that, in the cross-examination of the three defendants, the State's Attorney did not attempt to inquire into the commission of the robberies in the first and last taverns visited.

It was stipulated between the State's Attorney and the attorney for plaintiff in error that plaintiff in error, Botulinski, had been sentenced to the penitentiary for robbery on April 19, 1933, for from one to twenty years, by the criminal court of Cook county.

After the jury was impanelled, the attorney for the defendants made a motion, before the State's opening statement, that the court instruct them at this time to refrain from mentioning anything about the confession of the defendants, but the State's Attorney agreed not to mention it in the opening statement. Counsel next asked the court to instruct the State's Attorney to refrain from mentioning anything about the robbery that took place before the murder in this case, and also the robbery that took place after the murder, and then he made the following statement to the court: "Mr. Levy: * * * Now, we have on trial here a murder case. I say to the Court now and I am telling the Court so that there isn't any question about it as far as the record is concerned, as far as the defendants in this case are concerned, they are going to admit that they were present at the time that this alleged robbery took place and were present at the time the deceased was killed, so that there will be no question about identification as far as the defendants are concerned. So it would be not competent to introduce in evidence the robbery before or the robbery after for the purpose of identifying the defendants or showing that they were in the vicinity of the place where the murder took place. This is a capital case and the only

purpose that it would have would be to prejudice the defendants' rights before this jury, and under the *Mangano case* and the *Lane case,* which were murder cases, the Supreme Court has said that where that situation arises and there is not any question about the identification or any question about the crime itself, that any other crimes are incompetent. Now, there can be no purpose whatsoever to introduce the robbery before or the robbery after the murder because there is not any question about it in this case. They were identified. Confessions have been made, re-enactments of the murder have taken place. So there can be no question. There are four or five people that will identify the defendants as being present in the place. So there can be no question about any identification or their being in the vicinity of the crime."

The court aptly stated: "There is a plea of not guilty on file. After the State's case, suppose the defendant should not take the stand, or suppose the defendants did not admit anything? The State then would be precluded from proving up their case;" and in reply to Mr. Levy's statement that "They are not precluded from proving their case. Their case is complete in this case we have on trial here," the court said, "The Court does not know that," and, after the State's Attorney had stated his position, said: "The Court does not say at this time that the State should be precluded from proving up its case because of the fact that the defense is going to admit something later on," and the court denied defendants' motion.

At the conclusion of the State's opening statement, Mr. Levy made a motion to strike from the record the statements and details of the other offenses other than the murder. The court overruled this motion, and also a motion to withdraw a juror.

In the defendants' opening statement, their counsel said: "As far as the actual facts as to the defendants being present at the time of the killing of the deceased

in this case and as to Botulinski being responsible for the death of Weixler, there will be no contest as to those facts whatsoever. Circumstances that happened after the arrest, there will be a contest on certain facts which you will hear for yourselves from the witness stand and from the defendants in this case." Mr. Levy objected to the testimony of each witness as to the robbery before the murder and the robbery shortly after the murder, and made a motion to strike their testimony and also to withdraw a juror.

At the close of the State's case, the defendants made a motion to direct a verdict of not guilty, which was overruled by the court. The defendants also made a motion to renew their motions to strike the testimony of the witnesses as to the other robbery, both before and after the murder, and renewed their motion to withdraw a juror on account of the incompetent and prejudicial testimony, but the court overruled both motions.

The only question submitted to this court is whether the trial judge should have excluded evidence of the holdups perpetrated in the two taverns, one before the murder and one shortly after the murder.

Counsel for plaintiff in error, in his argument, says: "We don't contend here that this incompetent evidence should have been excluded merely because the defense at the outset of the trial informed the court that there was to be no contest of the issues upon which there could be any pretense that the other robberies could be competent," and at page 10 of his argument counsel says: "So in the case at bar, we do not rely upon the offer to admit facts made by the defense. The offer is referred to here merely to make clear that in the trial there was no issue upon which the other robberies could have been competent." Apparently, therefore, counsel do not contend that their admission made at the outset, before the opening statements were made, had the effect of precluding the State's Attorney from proving the presence of the defendants at

the scene of the crime, their identification, the motive for the murder, or other elements of the crime, but counsel base their objection upon the theory that the admission of the testimony as to the defendants committing the other two robberies just before and just after the crime in question tended to prejudice the jury and increase their punishment. In other words, he is not claiming an exception to the rule as to the admissibility of this evidence, but he puts himself squarely within the rule which has many times been announced by this court and which holds that said evidence is admissible, even though it tends to prejudice the defendant. *People* v. *Munday,* 293 Ill. 191; *People* v. *Scheck,* 356 Ill. 56.

Counsel for plaintiff in error, at page 5 of his argument, says: "It is clear from the record that the only dispute between the prosecutor and the defense was on the sole question of penalty. It is to be inferred that if the prosecution had waived the extreme penalty and had agreed to a recommendation, the case would not be here. It is important now to consider this phase of the case in order to review the position the trial court found itself in. We maintain here that the problem should have been easier to solve than if the defense contested all of the issue."

A somewhat similar situation was presented in *People* v. *Scheck,* 356 Ill. 56, which was a murder case from Cook county, and, at page 59, this court said: "Although no defense was made on behalf of the defendant, and although at the close of the trial, after the State had made its opening argument to the jury, the attorney for the defendant quite freely stated and admitted that the defendant was guilty of murder, yet the fact remains that the case was before the court on a plea of not guilty, making it incumbent upon the State to prove every element of the crime of murder beyond a reasonable doubt. The defendant did not see fit to enter a plea of guilty and then introduce before a judge whatever evidence he might have in

mitigation of his offense, but chose rather to take a chance that a jury might give him something less than the death penalty, thereby placing the State's Attorney in such a position that it was not only proper but necessary for him to introduce all of the evidence which might tend to prove the guilt of the defendant and the degree of his culpability. It is apparent from the entire argument of the attorney for the defendant, which appears fully in the record, that the jury was selected and its personnel chosen with the single idea of trying to get something less than the death sentence, and that a jury to his satisfaction was obtained without using all of his peremptory challenges." And at page 60 the court, in passing upon the offer of the defendant to stipulate that the defendant was in custody by virtue of "an indictment" at the time the murder was committed, says: "This offer was refused by the State's Attorney, and the court permitted him to introduce the records * * * [of the former indictments.] It was contended by the plaintiff in error that the real purpose of the State's Attorney was to create prejudice against the defendant, and that, inasmuch as the crime was fully proved, it was unnecessary for the State to prove a motive. On this point this court has held quite to the contrary," citing *People* v. *Munday*, 293 Ill. 191, where this court said: "His plea was not guilty, and he could not prevent the introduction of competent evidence to prove every element of the crime charged by admitting a part of them. The People were entitled to present to the jury all the facts in order that they might have proper weight in determining a criminal intention and what the verdict ought to be, as well as to decide whether the punishment should be by a fine only, or by fine and imprisonment. * * * It is said that the only effect of the evidence was to create prejudice against the defendant, and it is undeniable that proof of criminal acts tends to create a feeling of prejudice against the guilty person, but that results in every criminal prosecution and furnishes no

good ground for excluding evidence of such acts." These principles are further discussed and affirmed in *People* v. *Watkins,* 309 Ill. 318.

The court, at the bottom of page 61 and top of page 62 in said case of *People* v. *Scheck,* further said: "The principle * * * as to the admissibility of evidence which proves or tends to prove the main issue in the case, and regardless of whether or not it may disclose the commission of other crimes by the defendant is so well established in Illinois and approved by so many cases that it is unnecessary for us to abstract or quote in detail from them." And the court cites *People* v. *Lenhardt,* 340 Ill. 538; *People* v. *Durkin,* 330 Ill. 394; *People* v. *Swift,* 319 Ill. 359; *People* v. *Horn,* 309 Ill. 23; *People* v. *Hall,* 308 Ill. 198; *People* v. *Mandrell,* 306 Ill. 413; *People* v. *Cione,* 293 Ill. 321; *People* v. *Duncan,* 261 Ill. 339.

The plaintiff in error in the *Scheck case* contended that because his counsel offered to stipulate before the jury that plaintiff in error was in Judge Molthrop's court under an indictment, such was a sufficient reason for excluding all evidence as to the indictment under which he was held. The State's Attorney insisted he had a right to go further and that he was not barred from introducing his proof because of an offer to stipulate. The court said: "In this position he was right, as shown by the authorities hereinbefore cited, and the trial court so ruled. It has never been held that the State is barred from proving a fact because the defendant offers to admit it, but, on the contrary, the rule is that when a trial is upon a plea of not guilty the State is permitted to go ahead and introduce its full proof of the crime charged in the indictment."

The robbery of the tavern on Fullerton avenue just a few minutes prior to the robbery of the tavern on Addison street when the murder was committed would be admissible as showing the motive for the murder of Weixler, and also as a connected act in the crime of robbery, which

the record shows the defendants intended to commit in order to get money for the expenses of the spree on which they were going out on the night in question.

In the late case of *People* v. *Eckman,* 380 Ill. 413, this court said: "Evidence of other crimes is admissible if it tends to identify the accused as the person who committed the particular crime under investigation, to show his presence at the scene of a crime when an alibi is interposed, as here, and to prove design, motive or knowledge where these matters are in issue or relevant." See, also, *People* v. *Lenhardt,* 340 Ill. 538; *People* v. *Mandrell,* 306 Ill. 413; *People* v. *Hall,* 308 Ill. 198.

The cases cited by plaintiff in error in his brief are distinguishable from the facts in this case. *People* v. *Black,* 367 Ill. 209, is not in point here because this court there said at page 215: "Evidence of prior offenses, and the accusation of the commission, by the defendant here, of another crime, disconnected from the one for which he was on trial, was well calculated to prejudice the jury against him * * *." But the evidence in question in the *Black case* tended to show the commission of the crime of arson by the defendant on different occasions and also that he had been accused of embezzlement, and such offenses were in no manner connected with the crime of murder for which defendant was on trial, and the proof of these facts naturally prejudiced the jury against him.

The evidence introduced in *People* v. *Mangano,* 375 Ill. 72, was of other crimes by the defendant, including robbery and rape, and he was on trial for the murder of a policeman. The murder was committed on November 20, 1939, and the other crimes of robbery and rape testified to occurred on April 8, 1939; November 5, 1931; November 7, 1939; November 12, 1939; November 15, 1939, and October 16, 1939. The defendant denied participation in each and all of said crimes. This court in that case announced: "Evidence which discloses that the

accused committed crimes other than the one charged is admissible only when it tends to establish the crime for which he is being tried. Before such evidence is admissible, it must meet the same test as to relevancy and materiality to the issues as other evidence. [Citations.] It has been held that the evidence of other crimes is admissible if it has a tendency to identify the accused as the one who committed the crime charged, to show his presence at the scene of the crime when an alibi is interposed, to prove design, motive or knowledge where these matters are in issue or relevant."

In *People* v. *Heffernan,* 312 Ill. 66, defendants were being tried for a murder committed during a robbery, and testimony of accomplices as to other robberies committed by the defendants on other occasions was held not admissible, as the evidence of the other crimes in noway tended to establish any material fact necessary to be proved. The court, however, recognized the rule that evidence of other crimes is admissible to identify the accused or to locate the accused at the scene of the crime.

In *People* v. *Lane,* 300 Ill. 422, the evidence admitted as to other crimes was part of the confession of the defendant which admitted the commission of another murder and of other highway robberies. This court said those other crimes were not connected in any way with the charge in the indictment. They were committed at other times and at different places and were irrelevant to the issue and incompetent to be shown on the trial of the murder charge.

In *Farris* v. *People,* 129 Ill. 521, the defendant had shot and killed the husband of his former wife, and after the murder the wife escaped from the house and defendant pursued her and took her into another house where he committed the crime of rape upon her, and this court held that there was no evidence whatever connecting the two acts or tending to show wherein the commission of the rape had any bearing upon or tendency to explain the com-

mission of the homicide, and that the proof of the rape did not tend to prove defendant guilty of murder.

The defendant did not see fit to enter a plea of guilty and then introduce before a judge whatever evidence he might have in mitigation of his offense, but chose rather to take a chance that a jury might give him something less than the death penalty, thereby placing the State's Attorney in such a position that it was not only proper but necessary for him to introduce all of the evidence which might tend to prove the guilt of the defendant and the degree of his culpability. His plea was not guilty and he could not prevent the introduction of competent evidence to prove every element of the crime charged by admitting a part of them.

The trial court did not err in permitting the State to prove the robbery of the tavern on Fullerton avenue committed just before the commission of the murder and the evidence of the subsequent robbery of the tavern on Cicero avenue immediately thereafter.

Plaintiff in error further contends that the court erred in failing to include in the instructions an explanation of the law limiting the purpose of the evidence of other offenses and in not explaining to the jury by way of instructions the theory upon which the court admitted evidence of other robberies. The record shows that the plaintiff in error did not offer any instructions, nor request the trial court to so instruct the jury. Under this state of the record, the plaintiff in error cannot now be heard to complain, as we held in *People* v. *Mason,* 301 Ill. 370; *People* v. *Lucas,* 244 Ill. 603; *Dunn* v. *People,* 109 Ill. 635.

The plaintiff in error does not argue the other points included in the assignment of errors and, therefore, the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*

Mr. Justice Gunn, dissenting.